IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JAN W. HARRIS                                                          PLAINTIFF

VS.                                                         NO. 1:03CV659-D-D

TRANSAMERICA LIFE INSURANCE COMPANY              DEFENDANT

OPINION GRANTING MOTION FOR SUMMARY JUDGMENT

Presently before the Court is the Defendant's motion for summary judgment. Upon due consideration, the Court finds that the motion shall be granted.

*A. Factual Background*

The Plaintiff originally filed this action in the Circuit Court of Lee County and was timely removed by the Defendant on the basis of diversity which has not been contested. The Plaintiff is seeking to recovery the proceeds of an insurance policy covering the life of Curtis Harris. The Plaintiff and Harris were married in 1984. The relationship was "chaotic" and the couple divorced in 1993. As part of the divorce settlement Curtis was ordered to maintain a life insurance policy naming his minor children as the sole beneficiaries. On May 2, 1995, a policy was purchased which provided death benefits of $100,000. The original policy application was made on April 4, 1995. Answers to health questions indicated that Curtis did not have any illness, disorder or injury in the five proceeding years.[1] In fact, at least as recent as August 1994, but likely earlier, Curtis had been informed that he had cirrhosis of the liver and while seeking treatment for alcohol related abdominal

---

[1] The original application, contained a number of health related questions which asked if the insured had been treated for, inter alia, any stomach, intestine or liver disease; has the insured used alcoholic beverages to excess, both of which Curtis answered no.

pain, Curtis admitted he had been in and out of alcohol rehabilitation over the past several years.[2] Despite awareness of his disease and diagnosis, the information was not disclosed on the application for insurance and the policy was issued.

Later, after several late and/or missed payments, it was necessary that the policy be reinstated. The reinstatement process involved completion of a reinstatement application, personal history interview and payment of all late or overdue premiums. Just as with the original application all the health questions on the reinstatement application were answered in the negative with no information about Curtis' known alcohol abuse, treatment or diagnosis forthcoming.[3] The answers were negative despite the fact that Curtis, just days before the reinstatement application was signed, had been admitted to the emergency room for gastrointestinal bleeding related to cirrhosis of the liver. Without notice or knowledge of Curtis' condition, the process was completed and the policy was reinstated on October 10, 1999.

Following years of excessive alcohol abuse, Curtis died on July 22, 2000.[4] Without reiterating his entire medical background, suffice it to say Curtis had a well documented history of alcoholism and related illnesses, numerous hospital admissions, as well as citations and arrests for alcohol related incidents and admissions to rehabilitative treatment centers. Notwithstanding the

---

[2] Curtis' discharge summary from this event indicated that he suffered from "alcoholic hepatitis, alcohol abuse, and fatty liver, secondary to alcohol."

[3] The Plaintiff admits that the handwriting on the reinstatement application is her own. Also, given Curtis' well documented condition, four of the nine health related questions would have required a positive response.

[4] The parties disagree as to the cause of death. The original cause was attributed to gastrointestinal bleeding resulting from esophageal variceal bleeding." The cause of death was later changed to "closed head injury." In light of the applicable law and the conclusion reached below, the cause of death is immaterial.

cirrhosis diagnosis prior to the original policy application, the Plaintiff insists she was not aware of Curtis' long history of alcohol abuse. Instead she offers that Curtis was an absentee husband and "when he was away from me I don't know what he did."[5] To the contrary, detailed medical records indicate that at least on two occasions, the Plaintiff transported Curtis to a hospital for treatment related to alcohol.[6] In support of summary judgment, the Defendant contends that the Plaintiff's and/or Curtis' failure to disclose the cirrhosis diagnosis, other alcohol related illnesses and treatment constitutes material misrepresentations entitling the policy to be rescinded. In other words, the Defendant's position is that had the known material information been disclosed the policy would not have been issued.

## B. Standard for Review

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265, 275 (1986) ("the burden on the moving party may be discharged by 'showing'...that there is an absence of evidence to support the non-moving party's case"). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue

---

[5] However, Curtis, himself, attributed the couple's divorce in part to his drinking. Curtis told a doctor that "drinking did play a big part in his divorce from his wife." The doctor noted this statement in Curtis' medical records.

[6] On September 8, 1997, approximately two years prior to the reinstatement application, the Plaintiff found Curtis passed out in her home and apparently gave his medical history to a doctor for admission and treatment. Again, on December 5, 1999, it is noted in medical records that Curtis' "ex-wife apparently brought him in, but left before any history could be obtained."

for trial.'" Celotex Corp., 477 U.S. at 324, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274. That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202, 216 (1986). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).

*C. Discussion*

Under Mississippi law, material misrepresentations in an application for insurance may allow the insurer to rescind the policy only where the statement is both false and material to the acceptance of the risk or hazard assumed by the insurer. Miss. Code Ann. § 83-9-11(3). Therefore, to establish a material misrepresentation has been made on an insurance application (1) it must contain answers that are false, incomplete, or misleading, and (2) the false, incomplete or misleading answers must be material to the risk insured against or contemplated by the policy. Carroll v. Metro. Ins. & Annuity Co., 166 F.3d 802, 805 (5th Cir. 1999). The party seeking to avoid the policy must demonstrate a material misrepresentation was made by clear and convincing evidence. Mass. Mut. Life Ins. Co. v. Nicholson, 775 F. Supp. 954, 959 (N.D. Miss. 1991) (policy rescinded where applicant gave misleading and incomplete answers to health related questions). A misrepresentation is material if knowledge of the true facts would have influenced a prudent insurer in determining

whether to accept the risk. <u>Wesley v. Union Nat. Life</u>, 919 F. Supp. 232, 234 (S.D. Miss. 1995) (summary judgment was granted where false statements in policy application about recent hospitalization, cocaine or heroin use, and consultation with a physician were material misrepresentations voiding the policy). An insurance company has a right to rely on statements made in the application regardless if the statement was made in good faith. <u>Id.</u> at 234. Furthermore, there is no requirement that the cause of death relate to the concealed risks. <u>Id.</u>

      1. <u>Misrepresentations</u>

As previously noted, the original application included several health related questions. The first question of concern asked, "has the proposed insured had or been treated for . . . stomach, intestines or liver?" This question was answered with "no" despite the undisputed fact that Curtis had been previously diagnosed with cirrhosis of the liver, a diagnosis that was reaffirmed just months prior to completion of the application. The next pertinent question asked, "has the proposed insured had, during the past five years any illness, disorder, or injury, or any surgical operation other than those mentioned." Again the answer was negative even though Curtis had knowingly been battling alcoholism for years. Finally, "has the proposed insured . . . used alcoholic beverages to excess?" The answer marked is "no" in defiance of Curtis' documented medical history to the contrary.

Yet even more misrepresentations were made during the reinstatement process. The application for reinstatement included nine health related questions, four of which are implicated by the present dispute. The first questions asked, "since the original policy date or within the past five years, have you consulted any physician or been confined or treated in any hospital sanitarium or similar institution?" Totally disregarding Curtis' countless hospital admissions and consultations with physicians since the original policy date, the answer given was "no." Next, "do you now have

any disease or impairment?" As the Court has repeatedly noted, Curtis had been diagnosed with cirrhosis of the liver– a disease. In spite of this absolute fact, the question was answered negatively. "Within the past five years have you received or been advised to have treatment for drug usage, whether legal or illegal, alcoholism or been a member of AA?" This question, too, was answered in the negative although Curtis had on numerous occasions been advised to seek treatment for alcohol abuse, and had at some undetermined point been a member of Alcoholics Anonymous.[7] The fourth pertinent question asks "within the past three years have you been charged with driving under the influence of alcohol or drugs . . .? The answer given was "no." However, the uncontested proof indicates that Curtis had been arrested for two DUI's and twice for public drunkenness. A trial was scheduled for one of the DUI offenses on October 7, 1999, just six days after the reinstatement application was signed.

Perhaps there may be some doubt regarding the extent of the Plaintiff's knowledge of Curtis' alcohol abuse and medical condition. However, the proof shows that the Plaintiff was married to Curtis for nine years and had known Curtis since she was thirteen years old. The Plaintiff also acknowledged that even after their divorce, her relationship with Curtis continued. In her own words, the Plaintiff admitted "there would be times when we were together and times we would be apart." Given Curtis' extensive documented medical history of excessive alcohol consumption, it is inconceivable that the Plaintiff would not have been aware of his addiction and illness. Nonetheless, it is not necessary that the Defendant prove knowledge of falsity. Rather, the Defendant must only demonstrate that statements in the application for insurance were false. The

---

[7] Approximately five days after the reinstatement application, Curtis was admitted to North Mississippi Health Services. During this visit Curtis told an admitting physician that he had been in AA.

Defendant has accomplished this with insurmountable evidence.

### 2. Materiality

There is little room to argue that all of the misrepresentations identified above are not material to the issuance of a life insurance policy. Indeed, if the fact that Curtis had been diagnosed with cirrhosis of the liver were disclosed, this alone would have likely resulted in the policy not being issued at all. Stated differently and consistent with affidavits, if the Defendant knew that Curtis suffered from cirrhosis or knew of Curtis' on-going alcohol abuse, Transamerica, in all reasonable prudence, would not have issued the policy; nor would the policy have been approved for reinstatement. Without question Curtis' life threatening illness and unabated addiction were material to the Defendant's assessment of the risk in determining whether to issue a life insurance policy.

Despite the Plaintiff's opposition, it is uncontradicted that this material information was withheld from the Defendant. The Defendant has proven with overwhelming evidence that the application for insurance and for reinstatement contained numerous false statements. Further, the Defendant has demonstrated by clear and convincing evidence that the false statements were material to its determination accepting the risk and ultimately issuing the policy. Therefore, the Defendant has sustained its burden showing there is no genuine issue of fact presented that would require a jury's consideration. Accordingly, the Defendant's summary judgment motion shall be granted.

SO ORDERED, this the 13th day of July 2005.

/s/ Glen H. Davidson  
Chief Judge